H. G. SPRINGS v. JOHN T. SCHENCK et al.

*Action to Recover Land—Lost Papers in Justice's Court—Evidence—Books and Documents—Jury not Allowed to Inspect—Estoppel—Tenancy—Judge's Charge—Correction of Error.*

1. On the trial below the Court found that the papers in an action tried before a Justice of the Peace had been lost, and the Justice was permitted to identify the entries made by him in his docket at the date of the trial before him, and to testify as to the substance of of the lost papers: *Held,* not to be error.

2. The finding of the Court below that the papers in a case tried before a Justice had been lost, and could not be found, is not, in its bearing upon the admissibility of secondary evidence to prove their contents, reviewable in this Court.

3. An estoppel, growing out of the judgment of a Justice's Court, in an action involving the question as to whether the defendant was plaintiff's tenant, exists only for the time that the defendant was adjudged to be such tenant.

4. A custodian of a book or document, or one in charge of any writing filed or lodged by law in his keeping, is authorized to tell a jury *ore tenus*, when the original is offered in evidence, what is the true entry, if the writing cannot be easily read, or if, by the custom of the office, some sign be used to supply the place of an omitted word.

5. In such case, the jury should not be permitted to inspect the book or writing.

6. In an action to recover land, the Court charged the jury that title having been shown to be out of the State, a plaintiff can show title "first, by a paper title; second, by adverse possession for seven years under known and visible boundaries, and under colorable title by plaintiff and those under whom he claims; and third, by estoppel." If it was error to leave the jury without further explanation, it was cured when the Court further charged that if the deed (under which plaintiff claimed) covered the land in dispute, including a certain lot, and the agents rented and gave that lot in for taxes for seven years before the suit was brought, the possession of the lot would, by law, be extended to the boundaries of the deed, and the plaintiff and those under whom he claimed would, by construction of law, be in possession of the whole.

This was a CIVIL ACTION, tried before *Gilmer, J.*, at Fall Term, 1888, of MECKLENBURG Superior Court.

The action was brought to recover possession of the land described in the complaint. When the case was called for trial, the plaintiff announced that he was not ready to try, because of the absence of one T. J. Orr, a surveyor, by whom he expected to prove that the land described in the complaint was covered by the deeds from Phelps to Rothchilds, and from Rothchilds to the plaintiff, hereinafter referred to. The defendants' counsel replied that defendants wished to try, and would admit what plaintiff stated he expected to prove by the witness Orr, and defendants did admit that the said deeds covered the land described in the complaint.

The plaintiff introduced evidence tending to show that the title was out of the State. He then introduced a deed from Herman Phelps to S. & F. Rothchilds, dated 18th

June, 1868, and a deed from said Rothchilds to plaintiff, dated June, 1883. Copies of said deed are hereto annexed and made part of the case.

J. J. Sims, a witness for the plaintiff, testified: "I was agent of S. & F. Rothchilds from 1870 to 1880, and took possession of land in dispute as agent. I rented the 'Mary White cabin lot' from year to year and from 1870 to 1880; this was all the rent I got. The balance of the land was not in cultivation. The 'Mary White cabin lot' is not on the *locus in quo*. In 1880 I rented the lands covered by the deed of Rothchilds from Phelps to defendant Schenck, and told him I did not know the boundaries, but would rent him all land called for in that deed. He was to pay $3 for the first year and $5 for the second year. I turned over the land to E. K. P. Osborne in 1880 or 1881. The first conversation with Schenck was in 1879. The 'Mary White cabin' was burnt just before, perhaps the year before. I did not know I was renting lot No. 1110, but rented all covered by deed."

E. K. P. Osborne, a witness for the plaintiff, testified: "I was agent for the Rothchilds in 1881, but did not know the lands I was to take charge of until I saw the deed to Rothchilds. Schenck was in possession; I applied to Schenck for rent. He agreed to pay rent, and afterwards I had a conversation with him about buying the land. I agreed to sell him the land covered by the Rothchilds deed. I did not get the money, and afterwards Schenck told me he had arranged to get it, and, if he did not, would pay rent. This was in 1881 to 1883."

H. G. Springs, in his own behalf, testified: "I bought the land in 1883, and afterwards informed Schenck of the purchase. Schenck cultivated the land in wheat that year (1883). Schenck said he had rented it from Sims."

The defendants denied that they, or either of them, had ever rented the land described in the complaint, or any part

of it, from Sims, or Osborne, or the plaintiff, and alleged that it was the "Mary White cabin lot" that Schenck had rented from Sims in 1879 or 1880, and from Osborne, and it was the property referred to in conversation with plaintiff. In order to estop the plaintiff as to this, the defendant proposed to show that an action had been brought in 1883 for a part of the wheat raised on the *locus in quo*, as rent, by plaintiff against the defendant Schenck, which resulted in a judgment for Schenck, and for this purpose the defendant introduced as a witness Capt. R. P. Waring, who testified that he was a Justice of the Peace for Charlotte township, Mecklenburg County, in the year 1883.

The witness was then asked by the defendants' counsel if he had tried an action between the plaintiff Springs and the defendant Schenck in that year, and if so, what was the nature of the action?

The plaintiff objected to this question on the ground that the papers in the case were the best evidence of the nature of the action, and should be produced.

The defendants' counsel then asked the witness if he had the papers, and could he produce them. The witness replied that he had made diligent search at the last trial of the case, and since, among his papers for the papers in said case, and had looked for them where they should be; that they ought to be among his papers at his office at the mint, but, after diligent search there, he had been unable to find them, and that he thought they were lost.

His Honor found as a fact that diligent search had been made by the witness for the papers, and that they could not be found, and accordingly overruled the plaintiff's objection, and plaintiff excepted.

The witness, therefore, testified: "I tried an action between the plaintiff Springs and the defendant Schenck in August, 1883. The action was brought to recover unthreshed wheat

from Schenck as rent due the plaintiff for the land on which it was raised."

The witness produced his Justice's docket, and the defendant proposed to have the witness read the entries made therein by him as Justice in the case of *Springs* v. *Schenck*, above referred to.

The plaintiff objected to the entries in the docket as evidence because the docket was not a record, and the witness who made the entries is alive and can testify as to what he did.

The objection was overruled, and the plaintiff excepted.

The witness read from the docket the following entries: "July 19th, 1883, issued summons returnable 20th of July, 1883, at __ o'clock __ M., and delivered same to C. C. King, constable. Summons returned executed. Case came on for trial. Continued to August, 1883. Both parties in Court, and, after patient investigation and elaborate argument of counsel, it is adjudged that the defendant is not a tenant of the plaintiff, so as to entitle him to the remedy of claim and delivery. It is, therefore, ordered that plaintiff return property described in the complaint to defendant. Judgment against plaintiff for cost in full. Appeal prayed and granted. Notice waived, with parties present. Appeal withdrawn."

*Cross-examined.*—The witness further testified: "I made these entries the evening the case was tried. There is an entry on the docket of a motion made by plaintiff to make S. & F. Rothschilds parties plaintiff to use of Springs, but this motion was withdrawn or overruled. My recollection is that the action was for the recovery of some rent wheat under the landlord and tenant act. I have not been able to find papers in the case."

The defendants on this point introduced Schenck, who testified: "I was present at the trial before Capt. Waring. The action was brought to recover certain wheat grown on the land in dispute by me in 1883, and claimed by the

plaintiff as rent. The plaintiff alleged in that suit, and offered evidence to show that I was his tenant, and had not paid the rent, and that he was entitled to wheat as rent. I denied this, and the question was, whether I was tenant of plaintiff Springs in 1883, or not, of the lands in dispute."

The plaintiff here introduced E. K. P. Osborne, who testified: "I was present at the trial before Waring, and appeared as attorney for the plaintiff. My recollection is that the question before the Justice was whether the title to real estate came in controversy, and the decision of the Justice turned on that point—the Justice, as I recollect, holding that, as Springs purchased from Rothchilds, there was no privity between him and Rothchilds, and he could not maintain the action, and that there was no tenancy."

The defendants then offered in evidence a deed from Robert F. Davidson to Gray Toole, dated 7th day of October, 1869, covering the *locus in quo*, and registered in 1884.

John T. Schenck, witness for the defendant, testified: "The deed was made to Toole, though I had paid half of the purchase-money, and it was understood and agreed at the time (7th October, 1869) that I should have a deed for half of the land. Afterwards the deed was made by Mr. Davidson to me for one-half interest, with consent of Toole, and in pursuance of the agreement. The deed was dated as of the time of agreement with me, because it was understood that it should have effect as of that time. It was registered April 28, 1883. It was made by Mr. Davidson to me, because we thought this would be the same as if Toole had conveyed to me, and Toole and I had fallen out. I rented the 'Mary White cabin lot' from Sims in 1879 or 1880, and not the land in dispute. I had no idea of renting the land in dispute, and did not think I was renting it, or that Mr. Sims or Mr. Osborne thought so. I went into possession of the *locus in quo* shortly after Mr. Davidson gave us the deed in 1869, and cultivated it. First pastured on it and then

cultivated it; have had possession of it in this way ever since, using it as mine and Toole's; went into possession of it with Toole's consent, under the Davidson deed, the boundaries of which covered the land.  I cultivated up to the line or fence of the 'Mary White cabin lot,' until shortly after the cabin was burnt, and then I rented the cabin lot, as I could cultivate it conveniently with my land after the cabin was burnt, and could get from my land over it better than before.  The 'Mary White cabin lot,' was surrounded by a fence, but the other land was not enclosed.  I cultivated *locus in quo* from the time fence law was passed, in 1876, and after cabin was burnt, in 1879, I continued to cultivate it with the cabin lot.  I agreed with Mr. Osborne to rent the cabin lot and some land on the other side of the road, and some near the St. Catherine's mine tract.  He did ask me to buy some land belonging to Rothchilds.  Said he could not locate it, and that I would have to hunt it up.  I was advised not to buy, and did not.  I paid rent on the 'Mary White cabin lot,' but on no other land, and none on the *locus in quo*, and never rented it from anybody, for we always claimed it.  Told Mr. Osborne that I claimed land down there. In 1883 Mr. Springs, the plaintiff, sued me before Captain Waring, a Magistrate, for wheat raised on the disputed land, claiming that I was his tenant, and had not paid the rent, and that he was entitled to wheat under the landlord and tenant act.  It was decided by the Magistrate that I was not his tenant.  Neither Mr. Sims nor Mr. Osborne read the Rothchilds deed to me."

Frank Caldwell, a witness for defendant, testified: "I knew the cabin lot, where Mary White lived, and remember when it was burnt.  I know the land in dispute.  Schenck worked it one year before the cabin was burnt, but not the lot where the house was.  He worked that afterwards."

Defendants introduced other evidence tending to show that defendant worked the disputed land before the cabin

was burnt in 1879, and worked the cabin lot afterwards, and that the cabin lot was enclosed by a fence.

The plaintiff introduced the tax-books for the year 1875, for the purpose of showing that neither of the defendants listed the land in dispute for taxation that year.

Plaintiff proposed to exhibit the tax-books to the jury for the purpose of showing that certain marks in the returns of Gray Toole were ditto marks, immediately under the previous return. The defendant objected to the plaintiff's showing the books to the jury. His Honor ruled that it was not proper to exhibit the books to the jury, but the witness Cobb, who was on the stand, and Register of Deeds and keeper of the books, was allowed to describe the marks and their appearance from the books; and the witness under plaintiff's examination described fully the marks and appearance of the returns, both the return of Gray Toole, and the return of the tax-payer immediately preceding his return—which last mentioned return, it appeared from the book, was for one city lot..

Plaintiff excepted.

There was evidence that Toole had afterwards given the land in for taxes, and there was also evidence as to the possession of the land by the plaintiff, and those under whom he claims, and by the defendants, but it is not necessary to be stated to present the exceptions of the plaintiff.

His Honor charged the jury as follows:

" The case turns on one or two points. Plaintiff alleges that he is the owner of the land described in the complaint, and is entitled to the possession, and these allegations the defendants deny. The plaintiff, in support of his allegations, offers a deed from Phelps to Rothchilds, and from the latter to him, which have been read to you. The burden is on the plaintiff; he must recover on the strength of his own title, not on the weakness of defendants'. He must show where the land he claims is, and that it is covered by his deeds.

He says the deeds cover the "Mary White cabin lot." The defendants admit the deeds cover the *locus in quo*, but not the "Mary White cabin lot," which plaintiff alleges, and defendants deny, is a part of the *locus in quo*. You must decide how this is upon the evidence, the descriptions in the deeds and complaint, the plats, position of streets and railroad, and other evidence before you. If you believe the evidence, the title to the land is out of the State, and being out of the State, the plaintiff can show title to it in several ways—first, by a paper title; second, by adverse possession for seven years under known and visible boundaries, and under colorable title by the plaintiff, and those under whom he claims; and third, by estoppel. The plaintiff claims to have shown title by adverse possession for seven years under colorable title, and also by estoppel. Color of title has been shown by plaintiff, as the deeds of Phelps to Rothchilds and Rothchilds to plaintiff, constitute color of title. He claims to have shown adverse possession for seven years, under his color of title by his witnesses, the agent of Phelps and Rothchilds, who stated that they rented the land and gave it in for taxes. If you find that plaintiff, and those under whom he claims, have had possession for seven years of the *locus in quo*, at any time prior to the bringing of this action, it would ripen their color of title into a good title and he would be entitled to recover. If the agent rented it and gave it in for taxes, that would constitute adverse possession. If the deed of Phelps to Rothchilds covers the land in dispute, including the 'Mary White cabin lot,' and the agents rented and gave that lot in for taxes for seven years before suit was brought, the possession of the 'Mary White cabin lot' would, by the law, be extended to the boundaries of the deed, and the plaintiff, and those under whom he claims, would, by construction of law, be in possession of the whole; and if you find this to be the case, the plaintiff would be

106—11

entitled to recover, and you will respond to the first and second issues, Yes, and assess plaintiff's damages. The defendants say that they have had possession of the *locus in quo* since 1876, the date of the passage of the stock law, claiming it under the Davidson deed, except the 'cabin lot,' which they never claimed. You must decide who has had the possession, the burden being on plaintiff. The plaintiff further alleges that Schenck entered as tenant of plaintiff, and under those whom he claims, and that Toole entered by collusion with Schenck, and that it would be a fraud in Schenck to claim title without first surrendering the possession. This is what is called an estoppel. This is perhaps the most material matter for you to consider under the first and second issues. If he entered as tenant, and Toole entered by his consent, or by collusion with him, they would be estopped to deny the plaintiff's title. Plaintiff alleges that he, and those under whom he claims, rented the *locus in quo* to Schenck, including the 'cabin lot.' The defendants deny this, and say that they never rented the *locus in quo* from anybody; that they went into possession of it soon after they received the deed from Davidson in 1869, and have had possession of it ever since, claiming it as their own. That Schenck, in 1879 or 1880, rented the 'Mary White cabin lot' from Sims after the cabin was burnt, but that the 'cabin lot' is no part of the *locus in quo*. That it was an enclosed lot, and used and occupied as a distinct parcel of land from the *locus in quo*. You must decide how this is The burden is on the plaintiff to show the facts upon which he bases the estoppel. If Schenck was tenant and Toole entered by his consent, or by collusion with him, you will respond to the first and second issues Yes, and assess plaintiff's damages. It is contended by the defendants that the question of tenancy was tried and decided by Mr. Waring, a Justice of the Peace, in an action between plantiff and Schenck to secure some rent-wheat grown on

the *locus in quo*. If the question involved in that action was whether the title to real estate came in controversy and the case was decided on that point, and the question of tenancy was not passed upon, or if any other question was decided than the one of tenancy of the *locus in quo* plaintiff would not be concluded by the judgment in that action. If the question is to Schenck's tenancy of the *locus in quo* was the sole question involved and was, on its merits, decided against the plaintiff, then plaintiff would be bound by the judgment, but only for the year 1883, and the estoppel of the judgment would not cover any time but the year 1883, and the plaintiff would not be estopped to show that Schenck rented before that year (1883) from Rothchilds, though Sims and Osborne are agents, and that he acquired the Rothchild's title by purchase."

The issues were submitted as set forth in the record, and a verdict thereon returned for the defendant. Motion for a new trial by plaintiff refused.

The plaintiff assigned the following errors:

1. That his Honor admitted incompetent testimony as above set forth.

2 That his Honor refused to admit competent testimony as above set forth, and he refused to allow the jury to see the tax books as above set forth.

3. For that his Honor charged the jury, that there must be an adverse possession of seven years, "*under known and visible boundaries*," and under colorable title, &c., the plaintiff objecting to the words "*under known and visible boundaries*"

4. Because his Honor charged that if, in renting the land from the agent of Rothchilds, Schenck honestly thought he was renting only the "Mary White cabin lot," and not the *locus in quo*, and there was a misunderstanding about what land was being rented, the tenant estoppel would not apply. (When the plaintiff moved for a new trial he assigned this error, and his Honor remarked that he did not so charge the

jury, but told them that it did not depend upon what either party understood, but upon what both agreed; and his Honor did so charge the jury).

5. That his Honor charged the jury that if the suit before Justice Waring was for rent-wheat for the year 1883, and the question tried and decided was whether Schenck was tenant of the premises, and it was adjudged that he was not tenant, they must find the issues for the defendant. (His Honor stated, when this error was assigned on the motion for a new trial, that he did not so charge the jury, but that he had charged them that the estoppel of the judgment could not cover more time than the year 1883, or it did not prevent the plaintiff from relying upon any tenant estoppel existing before that year, nor upon anything which occurred since that year).

There was a judgment for the defendants, and the plaintiff appealed.

*Messrs. G. F. Bason* and *C. W. Tillett*, for plaintiff.
*Mr. P. D. Walker*, for defendant.

Avery, J.—after stating the facts: The finding of the Court below that the papers in a case tried by a Justice of the Peace had been lost by him, and could not, after diligent search, be found, is not, in its bearing upon the admissibility of secondary evidence to prove their contents, reviewable in this Court.    *Bond* v. *Smith* (decided at this term); Greenleaf on Evidence, sections 84, 509 and 558; *ibid.*, Vol. 2, § 17.

A Justice's Court is not a Court of record, and, as was said in *Reeves* v. *Davis*, 80 N. C., 209, "the rule has been for many years to admit the judgments of Justices' Courts in evidence, on proof of their hand-writing, of their being in office at the time, and of the rendition of the same within their counties.   When properly proven and admitted, such judg-

ments, until reversed, are conclusive as to all the facts found and questions of law determined between the parties and privies thereto, not only in later litigation in the same action, or for the same cause of action, but in any subsequent suit between the same parties involving a different part of the same transaction that was the subject of the first controversy. *Brundhild* v. *Freeman*, 80 N. C., 212.

In the case before us for review, after the Judge, upon satisfactory evidence, had found that the original papers had been lost, the Justice of the Peace identified the entries upon his docket, kept at the time of the previous litigation, and was then allowed to state the substance of the lost papers. The officer who was the custodian of the book and the author of the writing in it, was qualified to tell what contemporaneous entries were made by him, according to the express requirement of *The Code*, and such fragmentary summaries were admissible in evidence. *Jones* v. *Henry*, 84 N. C., 320; 1 Greenleaf Ev., § 513 ; 1 Wharton on Ev., §§ 134 and 135:

In his charge his Honor told the jury, in effect, that if the testimony of the officer was true, the estoppel, growing out of the alleged tenancy, would only exist as to the year 1883, for which the Justice had adjudged that the defendants were the tenants of the plaintiffs, as to the land in controversy, and liable for rents out of the crops raised thereon. We think that the testimony was competent, and the charge in relation to it correct. *Williams* v. *Clouse*, 91 N. C., 322; *Temple* v. *Williams*, 91 N. C., 82. This conclusion disposes of the first and second exceptions, and that last taken to the instruction given by the Court.

It was not competent, when the Register of Deeds, who was the custodian of the tax-books, was put upon the stand and identified said book, to hand it to the jury for the purpose of allowing them to compare the entry of the return of the defendant Gray Toole with that of the tax-payer whose name immediately preceded his own on the book, and who

had returned one city lot for taxation, and determine whether
certain marks opposite to the name of said defendant were
not " ditto marks," indicating that said defendant had made
the same return.    The Judge refused to allow the jury to
inspect the book, but the witness was permitted to tell them
what the return of the defendant was, as appeared from the
book in his keeping as an officer.    The custodian of a book
or document, or one who is in charge of any writing recorded,
filed or lodged by law in his keeping, is the proper person
to certify a copy of any such written · instrument to be read
as evidence in the Courts (*The Code,* § 1342), and he is, there-
fore, authorized to tell the jury, *ore tenus,* when the originals
are offered, what is the true entry, if the writing cannot be
easily read, or, by the custom of the office, some sign be used
to supply the place of an omitted word.

The general rule is that written documents are not allowed
to be given to the jury for comparison or inspection.    It is
not necessary that we should discuss that rule, or point out
the exceptions to it.    It is sufficient to say that this case
comes within the rule.

Counsel very properly declined to discuss and insist upon
any other exceptions, save that growing out of the statement
by the Court in first part of the charge, of the abstract propo-
sition that title, being proven or admitted to be out of the
State, a plaintiff can show title—" first, by a paper title;
second, by adverse possession for seven years, under known
and visible boundaries, and under colorable title by plaintiff,
and those under whom he claims; and third, by estoppel."

If we concede (which we must not be understood as doing)
that it would have been error to leave the jury without
further explanation to reach the possible conclusion from
this instruction that plaintiff could not recover under the
law as laid down, unless he had shown an actual *posses-
sio pedis* of the land claimed, up to the boundaries of his

paper title, and also had located the lines of his deed, we think that the lucid explanation which was given in applying the law subsequently to the specific facts of this case, cured the error complained of, certainly if it was not more favorable to the plaintiff than the evidence justified the Court in making it. The jury were told that if the deed of Phelps to Rothchilds covered the land in dispute, including the "Mary White cabin lot," and the agents rented and gave that lot in for taxes for seven years before the suit was brought, the possession of the "Mary White cabin lot" would, by law, be extended to the boundaries of the deed, and the plaintiff, and those under whom he claims, would, by construction of law, be in possession of the whole, and if they found this to be the case, the plaintiff would be entitled to recover, and they would respond to the first and second issues Yes, and assess plaintiff's damage.

The whole case depended upon the bar of the action by estoppel growing out of the alleged tenancy. So far as it affected the interests of the plaintiff, that question was fairly and clearly submitted to the jury.

We see no sufficient ground for sustaining any of the plaintiff's exceptions, and the judgment must be affirmed.

Judgment affirmed.